## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT PIKEVILLE

**CIVIL ACTION NO. 2007-197 (WOB)**

**ORA SPENCE**                                                 **PLAINTIFF**

**VS.**                         **OPINION and ORDER**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                   **DEFENDANT**

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 10) and the cross-motion for summary judgment of the defendant (Doc. 11).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability.  Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity."  Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. § 404.1520(b)).  Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment.  Id.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  Id.  (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. pt. 404, subpt. P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience.  Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)).  Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work.  Id.  Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy.  Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was forty-five years old and has an eighth-grade education.  The claimant reads at a third-grade level and has borderline intellectual functioning. The claimant has prior relevant work experience as a maintenance worker and bus/van driver at a

senior citizen center.

The claimant alleges that he became disabled on November 15, 2002 due to a deteriorating spinal condition and low education. The court has reviewed the record and finds that the ALJ's succinct recitation of the medical evidence regarding claimant's physical condition is accurate. The evidence demonstrates that:

> [t]he claimant was involved in a minor ATV accident in September 2000 and three weeks after made complaints of low back pain while in the emergency room. An x-ray was positive for mild arthritic changes at the thoracolumbar junction (Exhibit 1F). A MRI revealed early degenerative disc disease at L3-4 and L4-5 with central herniation with slight encroachment upon the thecal sac. His treating physician, Thomas Smith, M.D. noted tenderness in the paralumbar area and prescribed the claimant pain medication and was counseled on a home exercise program (HEP). On evaluation in August 2002 the claimant was noted to have tender joints, especially at the knee. An x-ray of the lumbar spine in June 2003 showed only minimal degenerative changes consisting of osteophytes in the lumbar spine. On evaluation in June 2003 he was noted to have mild to moderate tenderness over L3-4 and tenderness in the joints. A repeat MRI in November 2003 showed no evidence of a herniated disc but did reveal mild early degenerative disc disease at L3-4 and L4-5. EMG/NCV studies were within normal limits (Exhibit 10F). On agency internist consultative examination in November 2003 the claimant complained of low back pain, but the physical evaluation was within normal limits. (Exhibit 2F). However, on exam in February 2004 he was noted to be in moderate to severe distress with pain and had mild to moderate gait disturbance, as well as mild to moderate lumbosacral tenderness (Exhibit 10F). A bone density scan in June 2004 was positive for osteoporosis of the lumbar spine and osteopenia of the left hip (Exhibit 11F). Currently the claimant takes prescription Hydrocodone and Ultam for back pain. On a more recent agency orthopedic consultative examination in July 2005, the claimant presented with a cane and had motion loss with pain and tenderness on exam. Kip Beard, M.D., agency consultative examiner, diagnosed chronic musculoskeletal lower back pain and bilateral radicular symptoms based on the MRI and bone scan (Exhibit 20F).

(AR 16).

At the hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ reserved his decision and ordered a consulting medical exam be performed on the claimant. At the subsequent hearing, the ALJ presented updated hypothetical questions to a vocational expert. At

the conclusion of the hearing, the ALJ stated that he was holding the record open for an additional twenty days and told  claimant's counsel to verify with Dr. Smith that the file contained all clinical or diagnostic testing that formed the foundation of the doctor's opinion. No additional evidence having been received, the ALJ performed the requisite five-step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability.  At step 2, the ALJ determined that the claimant's osteopenia and osteoporosis of the lumbar spine and hips, bilateral leg pain, degenerative arthritis, and osteoarthritis in the shoulders, spine, hips, and knees, chronic obstructive pulmonary disease, shortness of breath, near sightedness, borderline intellectual functioning and marginal literacy are severe impairments.

 At step 3, the ALJ determined that, although claimant has impairments that are "severe," he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. pt. 404, subpt. P, appendix 1.

At step 4, the ALJ found that the claimant did not have the capacity to perform any of his past relevant work  and, therefore, moved to step five.  At step 5, the ALJ found that the claimant has a residual functional capacity to perform a significant range of light work but that his ability to perform is compromised by nonexertional limitations caused by his borderline intellectual functioning and marginal literacy.  The ALJ asked the vocational expert whether there were any jobs in the economy that a person could perform who was claimant's age and had the same education, work history and RFC as the claimant.  The vocational expert opined that, given the limitations posed by the ALJ, a significant number of light level jobs existed in the national

economy that such a claimant could perform, including companion to elderly (7,000 jobs regionally and 110,000 jobs nationally), product assembler (3,200 jobs regionally and 85,000 jobs nationally),  and product packager (2,800 jobs regionally and 85,000 jobs nationally).  In addition, the vocational expert identified a significant number of sedentary jobs that the claimant could perform, including price sorter/selector (3,000 jobs regionally and 90,000 jobs nationally), machine tender operator (2,000 jobs regionally and 80,000 jobs nationally), and packager (1,800 jobs regionally and 85,000 jobs nationally).  Based on this testimony, the ALJ found that the claimant was not disabled.

The claimant's only argument on appeal is that the ALJ had a duty to recontact Dr. Smith, his treating physician, upon finding that the physician's opinion was not supported by the objective evidence.   The duty to recontact a medical source, however, is not triggered unless the evidence is "inadequate . . . to determine whether [the claimant is] disabled."  20 C.F.R. § 404.1512(e); Littlepage v. Chater, 1998 WL  24999 (6th Cir. 1998); Thompson v. Astrue, No. 07-112, 2008 WL 89954 (E.D. Ky. Jan. 8, 2008) (it is the inadequacy of the record which triggers the obligation to recontact the treating physician); Stephens v. Astrue, No. 07-188, 2008 WL 80210 (E.D. Ky. Jan. 4, 2008) (same).

Here, the ALJ reviewed the medical records and found that the objective medical evidence did not support Dr. Smith's overly restrictive RFC assessment.  The ALJ stated:

> In so finding, I am not unmindful of the residual functional capacity assessment set forth by the claimant's treating physician Dr. Smith.  Dr. Smith limited the claimant to lift/carry 10 pounds occasionally; stand/walk less than two hours total, 30 minutes at a time; sit less than two hours total, 15 minutes at a time; would need a sit/stand at will option; would have to take a scheduled break every 30 minutes; no prolonged sitting; no stooping or crouching; avoid temperature extremes, wetness, humidity and hazards; and would be absent from work more than four times a month (Exhibit 10F).  I reject, as such extreme limitations are highly inconsistent with both the modest treatment regimen and

5

mild clinical signs set forth by the weight of the medical evidence. Dr. Smith has not
given any supporting objective evidence to show such extreme limitations instead his
limitations have been based on the claimant's subjective complaints alone (Exhibit 10F
and 19F). His evaluations have noted only tenderness with no neurological focal deficits;
negative straight leg raising; no noted spasm; normal strength and sensation; normal deep
tendon reflexes; and mild clinical signs (Exhibits 10F and 19F). A chest x-ray was
normal (Exhibit 19F). At Exhibit 7E he reported that he drives; goes to church three
times a week when able; and watches television for eight to nine hours; plays video
games; and visits friends/family on a weekly basis. Moreover, the claimant had a
negative Rheumatoid factor, has never undergone physical therapy, went to a
chiropractor on one occasion, has had no injections, has never been referred to a pain
clinic, has never been referred to a specialist, and surgery has not been recommended.

(AR 20).

In reaching his decision, the ALJ also considered the reports of consulting examiners

Drs. Kidd and Beard. In November 2003, consulting physician Kidd performed a physical

examination of the plaintiff and noted that the claimant had a "normal physical examination."

(AR 137). Dr. Kidd also noted that the claimant could ambulate with a normal gait, appeared

stable at station and comfortable in the supine and sitting positions and that there was no

tenderness revealed during the examination of the cervical spine. A November 2003 MRI

showed only mild early degenerative disc disease at L3-4 and L4-5.

In June 2005, Dr. Beard performed a consultative examination and provided a RFC

assessment that limited the claimant to a reduced range of light work. Dr. Beard found the

claimant has chronic musculoskeletal lower back pain and bilateral radicular symptoms. Dr.

Beard stated that, based upon the objective findings, he found the claimant had some limitations

with heavy lifting and carrying, prolonged standing or sitting and repetitive bending at the waist.

Dr. Beard's RFC assessment limited the claimant to lifting 25 pounds occasionally and 15

pounds frequently, standing and sitting for 6 hours each in a eight-hour work day, and occasional

climbing, stooping, crouching, kneeling, and crawling. Dr. Beard also limited the claimant in his

ability to perform push/pull functions, working with moving machinery or working around

vibrations. Dr. Beard also stated that the claimant should not work in environments with

temperature extremes or high humidity.

The court finds that the record before the ALJ was not inadequate. To the contrary, the

record contained Dr. Smith's medical records and assessment, the records of consulting

examiners, and the results of objective medical testing, including an x-ray, two MRIs and a bone

density scan. Accordingly, the court having found that the record was not inadequate for the

ALJ to determine the issue of disability, the ALJ was not obligated to recontact Dr. Smith under

20 C.F.R. § 404.1512(e)[1].

Furthermore, the claimant has not set forth what evidence the ALJ would have

discovered had he recontacted Dr. Smith. Dr. Smith's medical records are in the record. At the

close of the second hearing, the ALJ left the record open for an additional twenty days and

---

[1] 20 C.F.R. § 404.1512(e) and C.F.R. § 416.912(e) provide:
    Recontacting medical sources. When the evidence we receive from your treating
physician or psychologist or other medical source is inadequate for us to determine whether you
are disabled, we will need additional information to reach a determination or a decision. To
obtain the information, we will take the following actions.
    (1) We will first recontact your treating physician or psychologist or other medical source
    to determine whether the additional information we need is readily available. We will
    seek additional evidence or clarification from your medical source when the report from
    your medical source contains a conflict or ambiguity that must be resolved, the report
    does not contain all the necessary information, or does not appear to be based on
    medically acceptable clinical and laboratory diagnostic techniques. We may do this by
    requesting copies of your medical source's records, a new report, or a more detailed
    report from your medical source, including your treating source, or by telephoning your
    medical source. In every instance where medical evidence is obtained over the telephone,
    the telephone report will be sent to the source for review, signature and return.

specifically instructed counsel to verify that all the objective evidence relied upon by Dr. Smith was in the record.  There is no evidence that Dr. Smith had any additional information that might have led to a different result.  Therefore, the plaintiff has not established that he suffered any prejudice from the ALJ's alleged failure to recontact Dr. Smith.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1.  That the administrative decision be, and it hereby is, **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g);

2.  That the motion for summary judgment of the plaintiff (Doc. 10) be, and it hereby is, **denied**;

3.  That the cross-motion for summary judgment of the Commissioner (Doc. 11) be, and it hereby is, **granted**; and

4.  That a separate Judgment shall enter concurrently herewith.

This 13th day of February, 2008.



Signed By:

**_William O. Bertelsman_** *WOB*

**United States District Judge**